IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CAROLYN WALL,

    Movant/Movant,

v.

UNITED STATES OF AMERICA,

    Respondent/Plaintiff.

)
)
)
) Crim. No. 11-46-SLR
) Civ. No. 15-361-SLR
)
)
)
)

## MEMORANDUM OPINION

Carolyn Wall. Pro se movant.

Jennifer K. Welsh. Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Counsel for respondent.

July 11 , 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

## I.     INTRODUCTION

Carolyn Wall ("movant") is a federal inmate currently confined at the USP

Hazelton in West Virginia. Movant timely filed a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255. (D.I. 134) The government filed an answer in

opposition. (D.I. 142) For the reasons discussed, the court will deny movant's § 2255

motion without holding an evidentiary hearing.

## II.     BACKGROUND

From July 2010 through March 2011, a number of fraudulent checks were
presented to stores such as Wal–Mart, Best Buy, and Target across
Delaware, Pennsylvania, Maryland, and New Jersey. The New Castle
County Police Department connected these incidents to [movant] and
executed two search warrants of her townhouse. During these searches,
the police found blank checks; counterfeit checks; documents with names,
dates of birth, and Social Security numbers; printouts of bank names,
addresses, and routing numbers; and check-writing computer software.
Over the course of the nine-month scheme, [movant] caused losses of
over $100,000.

A grand jury returned a thirty-count indictment charging [movant] with
conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire
fraud, in violation of 18 U.S.C. § 1343; identity theft, in violation of 18
U.S.C. § 1028(a)(7); access device fraud, in violation of 18 U.S.C. §
1029(a)(3) and (c)(1)(a)(i); fraudulent use of Social Security numbers, in
violation of 42 U.S.C. § 408(a)(7)(B); and aggravated identity theft, in
violation of 18 U.S.C. § 1028A.

[Movant] has never contested that she engaged in the fraudulent scheme.
In fact, in a proffer with the government, she admitted to making fake

checks and using other people's Social Security numbers. Her defense, instead, relied primarily on duress. Prior to trial, [movant] filed a motion to admit the expert testimony of psychologist Dr. Catherine Barber. According to the motion, Dr. Barber would "present testimonial evidence of the effect that longstanding physical and mental abuse, neglect and manipulation have had on [movant], which made [movant] a target of coercion by various unindicted family members" and by Shawn Dyton, a man with whom she was romantically involved. Despite its focus on duress, [movant's] motion also mentioned in passing that Dr. Barber's testimony would be used "to negate the mens rea of the charged offenses."

\* \* \* \*

At trial, the District Court ultimately excluded Dr. Barber from testifying as to duress because it found that [movant] had failed to establish a proper foundation. The jury convicted [movant] on all counts.

*United States v. Wall*, 593 F. App'x 128, 130 (3d Cir. 2014).

On September 24, 2013, the court sentenced movant as follows: (1) on counts one through twenty-five, twenty-seven, and twenty-nine, to concurrent terms of fifty-seven months of imprisonment, followed by three years of supervised release for counts one through twenty-five, twenty-seven, and twenty-nine; and (2) on counts twenty-six, twenty-eight, and thirty, twenty-four months of imprisonment (to run consecutive to the fifty-seven month sentence), followed by one year of supervised release. (D.I. 107) Movant appealed, arguing that she should have been permitted to introduce Dr. Barber's expert testimony of her alleged "psychotic features" and hallucinations to rebut the government's proof of specific intent to defraud. (D.I 108; D.I. 122) The Third Circuit rejected the argument and affirmed movant's judgment of conviction. *See Wall*, 593 F. App'x at 131.

## III. DISCUSSION

Movant timely filed her pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting the following four claims: (1) she was denied her right to a speedy trial; (2) a proffer statement was improperly used against her at trial; (3) two case agents were not sequestered during trial testimony; and (4) certain trial evidence was tainted due to an unreasonable search and seizure.

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary circumstances. *See Brecht v. Abrahamson,* 507 U.S. 619 (1993). If a movant fails to raise a claim on direct appeal, that claim is procedurally defaulted and cannot thereafter be reviewed pursuant to 28 U.S.C. § 2255 unless the movant demonstrates cause for the default and prejudice resulting therefrom, or that he is actually innocent. *See Bousley v. United States,* 523 U.S. 614, 616, 621-23 (1998). To establish cause for a default, a movant must demonstrate that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *United States v. Essig*, 10 F. 3d 968, 979 (3d Cir. 1993), *abrogated on other grounds as explained in United States v. Peppers*, 482 F. App'x 702, 704 n.5 (3d Cir. 2012). Significantly, an attorney's failure to preserve or raise a claim on direct appeal can constitute cause for a movant's procedural default only if counsel's failure amounts to constitutionally

3

ineffective assistance of counsel. *See Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009). To establish prejudice, a movant must show "that the errors at [his] trial . . . worked to [his] actual and substantial disadvantage, infecting [his] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 179 (1982). Notably, if the movant fails to demonstrate cause, a court is not required to determine if the movant was prejudiced by the default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).

The record in this case reveals that movant defaulted all four claims because she did not raise them to the Third Circuit on direct appeal. She attempts to establish cause by blaming defense counsel for not helping her "address these issues" on appeal. (D.I. 135 at 12) In order for defense counsel's actions to provide cause for movant's default, those actions must amount to constitutionally ineffective assistance of counsel. Ineffective assistance of counsel arguments are reviewed pursuant to the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 694. Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable,

4

the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

For the following reasons, the court concludes that defense counsel's failure to present claims one through four on direct appeal does not establish cause for movant's default of the four claims, because defense counsel's actions did not amount to constitutionally ineffective assistance.

### A. Claim One: Speedy Trial Violation

Movant contends that defense counsel's pursuit of psychiatric evaluations to determine if movant was competent to stand trial created a conflict between counsel and movant, and the resulting "delayed process stripped away [movant's] right to a speedy trial [in violation of her] Sixth Amendment [right] under the constitution." (D.I. 134 at 16) Given movant's focus on the amount of time defense counsel spent in pursuit of psychiatric evaluations, the court construes movant's speedy trial argument as focused on two distinct periods: (1) the 158 day period from defense counsel's oral motion for a determination of mental competency to stand trial, made during a February 16, 2012 teleconference (D.I. 30), through July 23, 2012, when a competency and status hearing occurred; and (2) the eighty-seven day period from defense counsel's motion for continuance of trial filed on January 18, 2013, with the purpose of obtaining a psychological evaluation and report (D.I. 56), through April 15, 2013, the first day of trial. The total "delay" attributable to the pursuit of psychological evaluations equals 245 days.

As an initial matter, the court notes that movant cannot overcome the strong presumption that defense counsel's reasons for seeking psychological evaluations

5

constituted sound trial strategy. There were two evaluations – one for competency and one for psychological conditions that might provide a trial defense. Dr. Barber's evaluation of movant revealed that she struggled with significant physiological conditions. At a pretrial hearing, Dr. Barber confirmed: "[t]o a reasonable degree of psychological certainty, psychological factors played substantial role in motivating [movant's] participation in the charged offense conduct," and the expert concluded that movant was vulnerable and susceptible to perceived threats by Shawn Dyton, a man with whom she was romantically involved. (D.I. 113 at 82) Given movant's psychological condition, defense counsel's decision to have movant evaluated and to use her susceptibility to perceived threats by Dyton as a defense at trial constituted sound defense trial strategy.

Additionally, movant's complaint that the 245 day "delay" caused by defense counsel's "strategy" to obtain psychiatric evaluations violated her Sixth Amendment right to a speedy trial is equally unavailing. The clearly established Supreme Court precedent governing Sixth Amendment speedy trial claims is set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). According to *Barker*, courts must consider four factors when determining if a defendant's speedy trial rights were violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* The Supreme Court has explained that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* Delays of one year or more trigger the analysis into the other *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). To the extent

6

the court should focus on the 245 day delay attributable to defense counsel's "pursuit" of psychological evaluations, there is no reason to engage in a full-blown *Barker* inquiry because the delay was less than a year. However, since the overall delay in this case was 711 days, the court will exercise prudence and apply the *Barker* balancing test to movant's speedy trial argument.

### 1. Factor one: length of delay

The 711 day time period between indictment and trial sufficiently triggers the initial presumption that movant was prejudiced by the delay. Thus, this factor weighs in movant's favor.

### 2. Factor two: reason for the delay

The Supreme Court has explained that the central inquiry with respect to factor two is "whether the government or the criminal defendant is more to blame for the delay." *Doggett*, 505 U.S. at 651. Generally, deliberate attempts by the government to hamper the defense by causing a delay are weighed heavily against the government. *Barker*, 407 U.S. at 531. However, "more neutral reason[s] such as a negligence or overcrowded courts"[1] are weighed less heavily against the government, provided there is no "showing of bad faith or dilatory purpose by the prosecution." *Government of the Virgin Islands v. Pemberton*, 813 F.2d 626, 628 (3d Cir. 1987). Finally, delays attributable to the parties' joint requests due to plea negotiations and/or the defendant's own requests for continuances, as well as delays attributable to extensive pretrial

---

[1] *Id.*

7

proceedings, are weighed against the defendant. *See United States v. Corbin*, 607 F.

App'x. 136, 139 (3d Cir. 2015).

The 711 day delay between movant's initial appearance on May 4, 2011 and the

first day of trial on April 15, 2013 was caused by a variety of matters, including: (1) the

scheduling of two trials following failed change of plea hearings; (2) pretrial motions; (3)

a competency evaluation; (4) a psychological evaluation; and (5) other proceedings in

which the court found that ends of justice were served by granting continuances. The

exact breakdown of the delay is set forth below; the references within the breakdown to

"time excluded" pertain to the properly excluded time from the seventy day time-period

allotted under the Speedy Trial Act, 18 U.S.C.

§ 3161(c)(1).[1]

- Time excluded between May 4, 2011 and May 18, 2011, pending resolution of the government's motion for detention hearing. (D.I. 13)

- Time excluded between May 18, 2011 and June 17, 2011, pending pre-trial motions, by order of the court. (D.I. 14)

- Time excluded between June 17, 2011 and August 1, 2011 by movant's motion to continue deadline for filing pre-trial motions, and by order of the court. (D.I. 18)

- Nine days not excluded between August 1, 2011 and August 10, 2011.

- Time excluded between August 10, 2011 and September 6, 2011, by the government's motion for a status conference. (D.I. 20)

---

[1]Compliance with seventy-day schedule set forth in the Speedy Trial Act does not bar a claim under the Sixth Amendment that the accused's right to a speedy trial under the Sixth Amendment. *See United States v. Salimonu*, 182 F.3d 63, 69 (1st Cir. 1999).

- Forty-five days not excluded between September 6, 2011 and October 21, 2011.

- Time excluded between October 21, 2011 and November 9, 2011, pending change of plea hearing, by order of the court. (D.I. 23)

- One day not excluded between November 9, 2011 and November 10, 2011.

- Time excluded between November 10, 2011 and April 30, 2012, pending pretrial motions and trial, by order of the court. (D.I. 24)

- Time excluded between April 30, 2012 and June 4, 2012, pending pretrial motions and new trial date, by order of the court. (D.I. 26)

- Time excluded between February 21, 2012, and July 23, 2012, pending resolution of movant's competency evaluation. (D.I. 30)

- One day not excluded between July 23, 2012 and July 24, 2012.

- Time excluded between July 24, 2012 and September 6, 2012, pending a status teleconference, by order of the court. (D.I. 37)

- One day not excluded between September 6, 2012 and September 7, 2012.

- Time excluded between September 7, 2012 and September 19, 2012, pending a status teleconference, by order of the court. (D.I. 38)

- Time excluded between September 19, 2012 and October 10, 2012, pending change of plea hearing, by order of the court. (D.I. 39)

- Time excluded between October 10, 2012 and October 25, 2012, at movant's request to continue change of plea hearing, by order of the court. (D.I. 41)

- Time excluded between October 25, 2012 and February 5, 2013, pending pretrial motions and trial, by order of the court. (D.I. 42)

- Time excluded between January 25, 2013 and April 15, 2013, at movant's request to continue trial date to obtain a psychological evaluation, by order of the court. (D.I. 56; D.I. 63)

- April 15, 2013 – Trial.

(D.I. 142 at 8-9) In sum, the overall 711 day delay was the result of: (1) the parties' plea negotiations, which culminated in the scheduling of the first change of plea hearing on November 9, 2011, and in the scheduling of the second change of plea hearing on October 25, 2012; (2) movant's eventual decisions to reject the plea offers on the eve of the hearings in November 2011 and October 2012, which resulted in the scheduling of a trial for April 9, 2012, and the scheduling of a trial for February 5, 2013; (2) the defense's request for a continuance of the April 2012 trial date to seek a competency evaluation; and (3) the defense's request for a continuance of the February 5, 2013 trial date to seek a psychological evaluation. Thus, with respect to the overall 711 day delay, the court concludes that the "reason for the delay" factor weighs against movant.

To the extent the movant's speedy trial complaint is limited to the 245 day period spent pursuing psychological evaluations, the court similarly concludes that the "reason for the delay" factor weighs against movant. Notably, movant cannot overcome the strong presumption that defense counsel's reasons for seeking psychological evaluations constituted sound trial strategy. One expert, Dr. Barber, conducted two evaluations – one in 2012 to determine movant's competency for trial and one in 2013 to assess movant's mental function and whether there were any factors that would pertain to her culpability and would affect her decision to plead guilty or proceed to trial. (D.I. 113 at 83) The 2012 competency evaluation revealed that movant was competent

10

to stand trial but that she was suffering from a major mood disorder and anxiety disorder. (D.I. 113 at 27) The 2013 psychological evaluation of movant revealed that she struggled with significant physiological conditions. At the pre-trial *Daubert* hearing on April 9, 2013, Dr. Barber confirmed: "[t]o a reasonable degree of psychological certainty, psychological factors played substantial role in motivating [movant's] participation in the charged offense conduct," and Dr. Barber concluded that movant was vulnerable and susceptible to perceived threats by Shawn Dyton, a man with whom she was romantically involved. (D.I. 113 at 82)

Given movant's psychological condition, defense counsel's decision to have movant evaluated and to use her susceptibility to perceived threats by Dyton as a defense at trial constituted sound defense trial strategy. Accordingly, the reason for the delay resulting from defense counsel's pursuit of psychological evaluations weighs against movant.

### 3. Factor three: assertion of speedy trial rights

When the accused is represented by counsel during his criminal trial, *Barker*'s third factor regarding the accused's assertion of his speedy trial rights will only weigh heavily in favor of the accused if some formal motion regarding the speedy trial violation was made to the trial court. *Hakeem v. Beyer*, 990 F.2d 750, 765 (3d Cir. 1993). In this case, movant's counsel never filed a motion raising speedy trial concerns. Although movant contends that she raised speedy trial concerns to defense counsel, and that she disagreed with counsel's pursuit of psychological evaluations, nothing in the record supports this contention. Even if movant did raise such concerns, movant's private

11

conversations with defense counsel do not satisfy the "assertion of rights" factor. Accordingly, the court concludes that factor three weighs against movant.

### 4. Factor four: actual prejudice

*Barker*'s fourth factor of prejudice should be assessed in light of the following three interests: (1) preventing oppressive pre-trial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired by dimming memories and the loss of exculpatory evidence. *See Barker,* 407 U.S. at 532. The most serious form of prejudice is the impairment of the accused's defense. *See Doggett v. United States*, 505 U.S. 647, 654 (1992).

In this case, movant was not incarcerated prior to her trial, and she does not complain about pretrial release conditions. Movant does not identify any witnesses that died or were lost as a result of the delay. Although movant asserts that her defense was "strained" and that she had to attend "countless psychiatric appointments" (D.I. 134 at 16), these allegations do not demonstrate that her defense was impaired by the delay. Thus, the court concludes that *Barker*'s fourth factor of prejudice weighs against movant.

### 5. Conclusion re: speedy trial argument

To summarize, the court finds that, as a whole, the government pursued movant's case with reasonable diligence. The majority of the 711 day delay in this case and, more specifically, the 245 day delay caused by psychological evaluations, should be weighed against movant. Balancing that factor with movant's failure to demonstrate prejudice, the court concludes that movant's speedy trial claim lacks merit under *Barker*.

12

It is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless arguments or objections. *See United States v. Sanders*, 165 F.3d 248, 253 (3dCir. 1999). Therefore, the court concludes that defense counsel did not provide ineffective assistance by failing to raise a meritless speedy trial claim on direct appeal.

Given movant's failure to establish ineffective assistance as cause for her default of claim one, the court will not address the issue of prejudice. The court also notes that movant's default of claim one cannot be excused under the miscarriage of justice exception to the default doctrine, because she has not provided new reliable evidence of her actual innocence. Accordingly, the court will deny claim one as procedurally barred.

## B. Claim Two: Improper Use Of Proffer During Trial

On July 18, 2012, movant agreed to a proffer with the government. (D.I. 45) The terms of the proffer were set forth in a letter agreement, which movant and her counsel signed. Paragraph three of the letter provides:

> The Government may use any statements made or information provided by your client, or on your client's behalf, during the interview to cross-examine your client at trial or any other legal proceeding, and during rebuttal at trial or any other legal proceeding if your client testifies. Moreover, statements made during the interview and any information derived directly or indirectly from your client's statements may be used to rebut any evidence offered by, or on behalf of, your client in any legal proceeding against your client.

(D.I. 49-2 at 2-3)

During the proffer, movant stated that she understood the terms of the proffer agreement, and she proceeded to admit the substance of the fraudulent scheme. (D.I.

13

45) Movant admitted she resided at 178 Auckland Drive in Newark, Delaware, the location where most of the incriminating evidence was found. (D.I. 45)

With regard to the conduct charged in counts twenty-five through thirty of the indictment, movant admitted that she altered a real social security card to use another person's social security number because she did not have good credit. She admitted to using that other person's SSN to obtain the lease, and to obtain cable and power service. (D.I. 45 at 3)

With regard to the check fraud scheme incorporated into counts one through twenty-two of the indictment, movant admitted to creating fraudulent checks that were found in her residence. (D.I. 45 at 3) She explained that she had been creating fraudulent checks for over a decade, since 2001. Movant also explained how she created the checks using a computer, and she identified how she obtained the check paper and ink. She admitted to cashing some of the checks and giving others to third parties to case and use towards purchases at area retail stores, including Acme and Wal-Mart. Movant stated that she received cash and gift cards purchased with the proceeds of the checks. Movant also admitted to other conduct that enabled her to continue the check fraud scheme, including: (1) altering real driver's licenses; (2) altering real social security cards; (3) using bank routing numbers she found on the internet; and (4) purchasing people's social security numbers that were necessary to cash payroll checks. (D.I. 45 at 3) Defense counsel was present during the proffer and a copy of the memorandum of the interview was provided to movant. (D.I. 45) The government filed a pretrial motion, seeking admission of the proffer statement in the

appropriate circumstance, such as if defense counsel were to raise any inference in cross-examination that was inconsistent with the proffer. *Id.*

In claim two, movant asserts that the use of the proffer during the trial violated her right to due process because it constituted self-incrimination, and that she would not have provided the proffer but for defense counsel's incorrect advice that it could not be used against her. Movant appears to focus on three specific instances to demonstrate how using the proffer prejudiced her. First, she contends that the government improperly used the proffer during its re-direct examination of Special Agent Sain with the Social Security Administration, Office of the Inspector General ("special agent Sain") regarding Shawn Dyton's role in the scheme. (D.I. 134 at 17; D.I. 116 at 20-25) Second, liberally construing the vague language in claim two, the court interprets movant's argument to be that the government improperly used the proffer during its re-direct examination of Special Agent Bracken with the United States Postal Inspection Service ("special agent Bracken") to rebut the inferences raised by defense counsel on cross-examination that movant did not live at 179 Auckland Drive, Newark, Delaware and to further explain the various co-conspirators' roles in the scheme (including Shawn Dyton's role). (D.I. 116 at 128, 143-151) Third, the court also liberally construes claim two as asserting that the government improperly used the proffer while cross-examining her. (D.I. 134 at 17)

Movant also appears to assert that defense counsel provided ineffective assistance by introducing the proffer during his cross-examination of special agent Bracken, because such use admitted movant's "prior bad acts" with respect to the scheme. (D.I. 134 at 17; D.I. 116 at 97-99, 117-124, 128, 135-143) Since defense

counsel's use of the proffer is not contemplated by the waiver provision, the court will address this issue independently from its review of the government's use of the proffer.

### 1. Government's use of the proffer

Determining whether a proffer statement was properly admitted during a trial involves determining if the waiver provision was both enforceable and properly triggered. As a general rule, a waiver provision is enforceable so long as the defendant entered the proffer knowingly and voluntarily. *See United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)(holding that proffer waivers are enforceable for impeachment purposes); *United States v. Hardwick*, 544 F. 3d 565, 569-70 (3d Cir. 2008)(affirming the government's use of defendant's proffer statements against defendant during the government's case-in-chief). Determining if the waiver provision of a proffer was triggered in a particular case "requires an analysis of the terms of the waiver." *Hardwick*, 544 F.3d at 570. As explained by the Third Circuit, a "proffer agreement is a contract and its terms must be read to give effect to the parties' intent." *Id*. The issue in *Hardwick* was whether the cross-examination conducted by the co-defendant's attorney contradicted the co-defendant's proffer statements, thereby waiving the government's agreement not to use the proffer against the co-defendant at trial. The "terms of the waiver [in *Hardwick*] were expansive, allowing the government to use [co-defendant's] proffer statements not only to cross-examine him, but also 'to rebut **any** evidence or arguments offered on his behalf.'" *Id*. The Third Circuit held that the government was permitted to introduce proffer statements because the co-defendant's attorney triggered the waiver in the proffer agreement by attempting to infer that persons other than the co-defendant were responsible for the criminal conduct. *Id*. at 571.

Applying this legal framework to the proffer in movant's case demonstrates that the proffer waiver was both enforceable and triggered. First, the record demonstrates that movant voluntarily and knowingly entered the proffer letter. Her statement that defense counsel "assured [her] that due to self-incrimination nothing [she] said could be used against [her] at trial" is rebutted by the clear and explicit language of the waiver provision in paragraph three of the proffer letter, which movant and defense counsel reviewed and signed. (D.I. 49-1 at 2) Notably, the waiver provision states that "any statements made or information provided by [movant] or on [movant's] behalf during the interview," and "statements made during the interview and any information derived directly or indirectly from [movant's] statements' may be used" in "any legal proceeding against [movant]." The government filed a pretrial motion seeking admission of the proffer statement in the appropriate circumstances, including if defense counsel raised any inference during cross-examination that was inconsistent with the information in the proffer. (D.I. 45) The court granted this motion during a pre-trial conference. (D.I. 115 at 208-209) Thus, the waiver provision in paragraph three of the proffer letter was enforceable.

For the following reasons, the court also concludes that movant triggered the waiver.

### a. Government's use of proffer on re-direct examination

To reiterate, paragraph three of the proffer letter provides, in relevant part, that "statements made during the interview . . . may be used to rebut any evidence offered by, or on behalf of, your client in any legal proceeding against your client." The foregoing sentence falls squarely within the "waiver" principle explained in *Hardwick*.

17

Since the government used the proffer statement to rebut the inferences raised by defense counsel on cross-examination of both special agents (D.I. 116 at 216-217), movant's contention that the government's use of the proffer statement violated her confrontation rights lacks merit.

### b. Government's use of proffer to cross-examine movant

Similarly, the government's use of the proffer to cross-examine movant did not violate her confrontation rights, since movant triggered the "waiver" sentence in paragraph three of the proffer letter by providing inconsistent information during her testimony. For example, the government properly used movant's admission in the proffer that she knew the victim's social security number was credit-worthy to rebut her testimony that she simply made up the number and did know if it was credit-worthy. (D.I. 119 at 58-60)

### 2. Defense counsel's use of proffer

Defense counsel referenced the proffer while cross-examining special agent Bracken and when cross-examining special agent Sain. When cross-examining special agent Bracken, defense counsel persistently questioned the special agent about movant's statements in her proffer that she resided at 179 Auckland Avenue. Defense counsel's pointed questions elicited special agent Bracken's response that he and special agent Sain conducted the proffer interview, and that movant "just" answered their questions. (D.I. 116 at 121-122) During his re-cross examination of special agent Bracken, defense counsel reiterated special agent Bracken's statement that he and special agent Sain ran the proffer interview, and had the special agent admit that whether or not movant "resided or didn't reside at 179 Auckland Avenue is, was

18

important to this case." (D.I. 116 at 152)  Defense counsel then showed special agent

Bracken the report he wrote concerning the proffer interview, after which agent Bracken

admitted that the report never stated that movant said she resided at 179 Auckland

Avenue. (D.I. 116 at 153)  Defense counsel's use of the proffer in this instance did not

amount to ineffective assistance.  By highlighting the absence of the reference to 179

Auckland Avenue in special agent Bracken's review of the proffer interview, defense

counsel was attempting to cast doubt on the government's insistence that 179 Auckland

Avenue was movant's residence which, in turn, would cast doubt on the government's

theory that movant was the leader of the scheme.

Defense counsel's use of the proffer while cross-examining special agent Sain

also did not amount to ineffective assistance.  Defense counsel persistently questioned

the special agent about movant's statement in her proffer that the investigators should

speak with Shawn Dyton regarding the scheme.  (D.I. 118 at 42-47)  Using the proffer in

this manner was consistent with defense counsel's strategy of shifting the blame to

Shawn Dyton and proving duress.

Given the strength of the government's evidence, defense counsel had few

theories to pursue.  The failure of defense counsel's strategy to cast doubt on the

government's theory that movant was the leader of the scheme and his strategy of

attempting to demonstrate that movant only participated in the scheme under duress

does not overcome the presumption that defense counsel's effort constituted "sound

trial strategy."  *See United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007); *see

also Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002)(mere existence of alternative

strategies does not satisfy deficiency prong of *Strickland* test).  Thus, the court

concludes that defense counsel did not provide ineffective assistance by using the proffer.

### 3. Conclusion re: proffer argument

While testifying, movant admitted she made and distributed fraudulent checks. (D.I. 119 at 18-82) Therefore, she cannot demonstrate a reasonable probability that the result of her trial and/or appeal would have been different but for defense counsel's failure to challenge the proffer usage by the government, or that her trial and/or appeal would have been different if defense counsel had not used the proffer agreement himself as discussed above.

Given movant's failure to establish ineffective assistance as cause for her default of claim two, the court will not address the issue of prejudice. The court also notes that movant's default of claim two cannot be excused under the miscarriage of justice exception to the default doctrine, because she has not provided new reliable evidence of her actual innocence. Accordingly, the court will deny claim two as procedurally barred.

### C. Claim Three: Non-Sequestration of Two Case Agents

At the beginning of the trial, defense counsel asked that only special agent Sain be allowed to sit at the government's table and requested special agent Bracken to be excused from the courtroom. (D.I. 114 at 4) The government responded that both special agents were needed to advise the prosecutor, given the massive scope of the fraudulent scheme, and because the special agents were from two different investigative agencies which handled different parts of the investigation. (D.I. 114 at 149) The government explained that "both agents are in the nature of experts," and

"[t]hey are needed at counsel table to advise the government with regard to specific matters with respect to the check fraud and Social Security fraud as the case progresses." *Id.*

The court asked defense counsel if there were legal obstacles it should consider, or if any prejudice might result from allowing both agents to remain in the courtroom. (D.I. 114 at 151-152) Defense counsel commented that much of the trial would include references to the agents' actions, and he believed that either one of the agents had sufficient knowledge of the investigation. (D.I. 114 at 4, 151-152) However, defense counsel did not identify any legal obstacles or potential prejudice that would result from having both agents in the courtroom. The government maintained that the agents had separate responsibilities and areas of expertise. (D.I. 114 at 149)

The court advised the government that it should not use the presence of the two special agents to improperly emphasize that there were two investigative agencies involved. (D.I. 114 at 153) The government agreed. *Id.* Given the absence of any further reason to sequester one of the agents, the court permitted both agents to remain in the courtroom during the trial. (D.I. 114 at 149-152) As the trial progressed, both agents testified about their respective areas of investigation, and they offered conclusions based on their experiences and expertise.

The court concludes that movant was not prejudiced by defense counsel's failure to raise the sequestration issue on appeal. Federal Rule of Evidence 651 provides that a court shall order the sequestration of witnesses upon the request of a party. Under Rule 615(b), however, a district court is not permitted to sequester a witness who is "an officer or employee of a party that is not a naturel person, after being designated as the

party's representative by its attorney." In addition, Rule 651 (c) prohibits the sequestration of "a person whose presence a party shows to be essential to presenting the party's claim or defense."

The Third Circuit has interpreted an earlier version of Rule 651(b) as permitting a case agent responsible for an investigation to remain in the courtroom, even if he will later testify on behalf of the government. *See United States v. Gonzalez*, 918 F.2d 1129, 1138 (3d Cir. 1990); *see also United States v. Drummond*, 69 F. App'x 580, 581 (3d Cir. 2003)(explaining "[w]e have held that a case agent for the government falls within [the] exemption [in former Rule 651(2), now Rule 651(b)], and ordinarily cannot be sequestered pursuant to Rule 615."). Although the Third Circuit has not addressed whether a court may exempt more than one testifying case agent from sequestration under Rule 615(b), it has held that deciding whether to permit an expert witness to remain in the court to testify based on other trial evidence "is within the discretion of the trial judge and should not normally be disturbed on appeal." *Indem. Ins. Co. of North Am. v. Electrolux Home Prods.*, 520 F. App'x 107, 112 (3d Cir. 2013).

In this case, the government successfully demonstrated that both agents were essential to the presentation of its case. Consequently, even if Rule 615(b) should be construed as only authorizing the presence of one case agent at trial, the court's refusal to sequester the second case agent fell within the ambit of Rule 615(c). *See United States v. Ortiz*, 10 F. Supp. 2d 1058, 1066 (N.D. Iowa 1998)("courts have permitted the government to have, in addition to a case agent pursuant to the second exemption [of Rule 651], another case agent in court pursuant to the third exemption, both of whom will later testify.")(collecting cases). When this reasoning is considered in conjunction

22

with movant's failure to assert or demonstrate that either case agent's testimony was influenced by the other, or that any improprieties resulted from the presence of both agents in the courtroom, it is clear that movant was not prejudiced by defense counsel's failure to appeal the court's denial of the sequestration request.

Given movant's failure to establish ineffective assistance as cause for her default of claim three, the court will not address the issue of prejudice. The court also notes that movant's default of claim three cannot be excused under the miscarriage of justice exception to the default doctrine, because she has not provided new reliable evidence of her actual innocence. Accordingly, the court will deny claim three as procedurally barred.

### D. Claim Four: Unreasonable Search and Seizure

In her final claim, movant contends that the November 26, 2010 search of her home was unreasonable, because someone entered the back door and removed items of evidence while law enforcement officers were guarding the front door. Movant asserts that the evidence removed from the back door was tainted.

During the trial, evidence was admitted showing that New Castle County Police Officers responded to movant's home in response to a 9-1-1 call on November 26, 2010. (D.I. 114 at 213) When the officers entered to perform a security sweep, they found incriminating lists of social security numbers and fraudulent checks in plain view. (D.I. 114 at 213-215, 229) While the officers waited in front of movant's home for a detective to respond with a search warrant, a bag and computer were taken from the back of movant's house. (D.I. 114 at 215-216) Once the warrant was obtained to search the home (D.I. 115 at 17), a K-9 unit tracked the bag into the woods behind the

house. (D.I. 114 at 238-241)  The government introduced the bag through the testimony of the New Castle County K-9 specialist (D.I. 114 at 236-241) and the New Castle County Detective who took custody of the evidence; both testified to similarities between the items found in the bag and in movant's house (D.I. 115 at 37-39).

To begin, movant does not identify, and the court is unaware of, any rule of law providing that a search becomes unreasonable if someone enters the scene and removes an item from it.  Therefore, to the extent movant is truly attempting to argue that the search violated her Fourth Amendment rights, it lacks merit and cannot constitute the basis of an ineffective assistance of counsel claim providing cause for her default of claim four.

To the extent the court should construe claim four as challenging the admission of the bag on the basis of a failure to establish a chain of custody or to properly authenticate under Federal Rule of Evidence 901, it is similarly unavailing.  Pursuant to Federal Rule of Evidence 901(a), in order to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Rule 901(b) provides a non-exhaustive list of examples of appropriate methods for authenticating evidence, including "[t]estimony that an item is what it is claimed to be" and "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(1),(4).  Since the "list is not exhaustive, [] it is clear that the government may authenticate documents with other types of circumstantial evidence, including the circumstances surrounding the documents' discovery."  See United States v. Turner, 718 F.3d 226, 232 (3d Cir. 2013).

24

In this case, the testimony of the New Castle County K-9 specialist and the New Castle County Detective who took custody of the bag was sufficient to lay the foundation for the admission of the bag and its contents. *See United States v. Reilly*, 33 f.3d 1396, 1425 (3d Cir. 1994)("All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be . . . [t]hat is because, once a prima facie showing of authenticity is made, it is the jury, and not the court, which ultimately determines the authenticity of the evidence.") Both the K-9 specialist and the detective testified about the circumstances surrounding the discovery of the black bag, and they describe how the black bag contained checks, social security cards, software, and check paper. (D.I. 114 at 239-249; D.I. 115 at 38-43) The detective and other law enforcement officers also testified about the checks and items found in movant's residence that were similar to items found in the bag. (D.I. 115 at 20-37) Finally, defense counsel thoroughly cross-examined all of the law enforcement officers involved with respect to the search and the bag.

Given these circumstances, the court concludes that movant's authenticity/chain of custody challenge to the admission of the bag lacks merit and cannot constitute the basis of an ineffective assistance of counsel claim providing cause for her default of claim four. As such, the court will deny claim four as procedurally barred.

## IV. EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d

Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief. Therefore, the court will deny movant's § 2255 motion without an evidentiary hearing.

## V.    CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence without an evidentiary hearing. Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable. *See* 28 U.S.C. § 2253(c)(2)("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011). An appropriate order will follow.